

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 7811 | DATE | 12/30/2002 |
| CASE TITLE | Lorothea Spencer vs. Office of the Illinois Attorney | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: In light of Spencer's failure to establish her prima facie case, we grant the OAG's motion for summary judgment. The Court grants the OAG's motion to strike (14-1) as well as its motion for summary judgment (7-1). The status hearing and in court hearing date of 1/9/03 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | 12/31/02 date docketed | 18 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | MR docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | 12/30/2002 date mailed notice | |
| GL | courtroom deputy's initials | 02 DEC 30 PM 4:40 (Date/time received in central Clerk's Office) | GL mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LOROTHEA SPENCER,  )
　)
　　　　Plaintiff,  )
　)
v.  )  Case No. 01 C 7811
　)
OFFICE OF THE ILLINOIS ATTORNEY  )
GENERAL,  )
　)
　　　　Defendant.  )
　)

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Lorothea Spencer, filed suit against Defendant, the Office of the Illinois Attorney General ("OAG"), under 42 U.S.C. §2000 *et seq.* ("Title VII"), alleging claims of hostile work environment sexual harassment and retaliation. The OAG moved to strike portions of Spencer's response to its Local Rule 56.1(a) Statement of Facts. The OAG also moved for summary judgment. For the reasons stated below, we grant both motions.

### I.    MOTION TO STRIKE

Before we can reach the merits of the OAG's Motion for Summary Judgment, we must address its Motion to Strike paragraphs 38, 42, 56, 58, 60, 62, 63, 64, 71, 74, 75, 76, 77, and 118 of Spencer's Response to the OAG's Local Rule 56.1(a) Statement. On a motion for summary judgment, the nonmoving party must provide a response to "each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." L.R. 56.1(b)(3)(A). The only two acceptable responses to a statement of fact are "admit" or "deny." The court may deem any other response an admission. *See Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284

(7th Cir. 1997). Furthermore, the material to which the party cites in support of its response must be admissible under the Federal Rules of Evidence. *See Woods v. City of Chicago*, 234 F.3d 979, 989 (7th Cir. 2000). The Seventh Circuit has "consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000).

Paragraphs 42, 56, 58, 60, 62, 63, 64, 71, and 118 of Spencer's response state "Plaintiff has insufficient information with which to admit or deny the allegations of [the given paragraph]." Such a response constitutes an admission to the facts set forth in each of the paragraphs. *See Williams v. Elyea*, 163 F.Supp.2d 992, 994 (N.D.Ill. 2002). Spencer concedes as much with regard to paragraphs 42, 58, 60, 64, 71, and 118. However, she argues that she partially denied, with citation to the record, the facts set forth in paragraphs 56, 62, and 63.

Paragraphs 56, 62, and 63 detail comments certain OAG staff members made to other OAG staff members outside of Spencer's presence.[1] The comments were critical of Spencer's attitude and performance at work. Spencer admits that members of the OAG staff made the comments, but denies, with citations to the record, the veracity of the comments. Nonetheless, we grant the OAG's motion strike Spencer's denials because they fail to rebut the facts set forth in paragraphs 56, 62, and 63.

Paragraph 63 also provides an example of Spencer's questionable work ethic. Spencer denies this portion of the paragraph by citing to two exhibits, Plaintiff's Exhibits G and I, neither of which is authenticated as required by the Federal Rules of Evidence. *See* FRE 901-902. Furthermore, Exhibit G relies on hearsay, yet Spencer fails to articulate a hearsay exception as mandated by the Rules. *See*

---

[1] Spencer, in her Memorandum in Opposition to Defendant's Motion to Strike, requests leave to amend her response to paragraph 56 to deny the paragraph based on the citation to Defendant's Exhibit N, pp. 18-19. However, Spencer, in her Response to Defendant's Local Rule 56.1 Statement, already denies paragraph 56 based on the above listed citation. As a result, we deny Spencer's request as moot.

2

FRE 801-805. Paragraphs 38, 74, 75, 76, and 77 of Spencer's response also deny the facts set forth in those paragraphs based on citations to Plaintiff's Exhibit G. Consequently, we grant the OAG's motion to strike Spencer's denial to the portion of paragraph 63 that provides an example of her questionable work ethic as well as her denial to paragraphs 38, 74, 75, 76, and 77.[2]

## II. BACKGROUND[3]

The OAG hired Spencer as a Claims Analyst on December 2, 1991. Since that time, Spencer has worked in the OAG Crime Victims Compensation Bureau in Chicago, where, as a Claims Analyst, she has been responsible for processing claims for compensation submitted by victims of violent crimes and their families. The Bureau processes and investigates more than 6,000 claims annually. In addition to working as a Claims Analyst, the OAG temporarily appointed Spencer as Lead Worker I for Claims Analysts from June 9, 1997 to September 30, 1997. The OAG temporarily appointed Spencer as Lead Worker II for Claims Analysts from October 1, 1997 to March 31, 1999, and again from April 1, 1999 to September 30, 2000. As Lead Worker, Spencer was responsible for performing her duties as Claims Analyst, while also providing guidance and assistance to Claims Analysts working within her assigned team.

---

[2]The OAG moved to strike Spencer's responses to paragraphs 38, 75, 76, and 77 for failure to cite to a specific portion of Plaintiff's Exhibit G. The OAG further moved to strike Spencer's response to paragraph 74 for failure to cite to any portion of the record. Spencer, in her Memorandum in Opposition to Defendant's Motion to Strike, requested leave to amend the citations she provided in her denials to paragraphs 38, 74, 75, 76, and 77 to the citations she provided in paragraphs 27 through 34 of Plaintiff's Statement of Genuine Issues. We grant Spencer's request, and consider the citations so amended. Even in light of the amended citations, however, this Court grants, on alternative grounds, the OAG's motion to strike Spencer's responses to paragraphs 38, 74, 75, 76, and 77 for the reasons set forth above.

[3]The following facts, unless otherwise specified, are culled from the parties' Local Rule 56.1 Statements of Material Facts.

The current Director of the Crime Victims Compensation Bureau, Marilyn Rivera, supervised Spencer's work as Claims Analyst and Lead Worker from 1997 until December 2000. Spencer claims that Rivera made sexually offensive remarks to her on three occasions between March or April 1999 and January 2000. The first incident allegedly occurred in March or April 1999 when Spencer unsuccessfully interviewed for the position of Support Staff Coordinator. Rivera approached Spencer before the interview and asked her what she was going to wear. Spencer told Rivera that she did not know. In response, Rivera said that Spencer should wear a tight red dress with a high split because such an outfit would make a member of the interview committee – Tom Stumpp, the Director of the Support Services Bureau – blush. Spencer asked Rivera "Why should I do something like that? What would everyone else think? Where did I come from and where was I going?"

The second incident purportedly occurred in April 1999 when Spencer successfully interviewed for the position of Lead Worker. Prior to her interview for that position, Rivera told Spencer that Support Staff Coordinator Stephanie Hayes-Lopez asked Rivera what Spencer would be wearing to the interview. Spencer, who was not present for the conversation between Rivera and Hayes-Lopez, asserts that Rivera informed Hayes-Lopez that Spencer was wearing a tight red suit. Spencer asked Rivera why she and Hayes-Lopez were discussing her attire. Rivera responded that Hayes-Lopez "just admires your body." The third and final incident allegedly occurred on or around January 31, 2000 when Rivera told Spencer that she encouraged Director Stumpp to tell Spencer about any available position with the OAG in Chicago. Rivera explained that when Stumpp told her that there were no available positions at that time, Rivera assured him that if he went to see Spencer, he would have "something available."

In February 2000, Spencer complained to Rocco LaSalvia, Senior Director of the Office Services Bureau, about the comments Rivera made to her on or about January 31, 2000. LaSalvia asked Spencer for permission to discuss the matter with Stumpp. On February 4, 2000, Spencer visited with Stumpp

who advised her to speak with Rivera to let her know how she was affected by her comments. Stumpp told Spencer that he had spoken with Rivera and requested that she not use his name "in any further comments of this nature." Stumpp informed Spencer that she could file a formal complaint against Rivera. Spencer declined, explaining that she wanted to handle the matter informally, and if at all possible to be transferred elsewhere in the office.

On February 7, 2000, Spencer went to Rivera's office to discuss the alleged harassment. Rivera explained that Spencer "should expect [her] conversations with [Spencer] to be reduced to work only; that [she] was the only one in [Spencer's] corner; and that one of [Spencer's] team members had been complaining that [Spencer] was not available." Rivera further informed Spencer that "she had to fight to get [Spencer] appointed as lead worker before, but [Spencer] should not expect [ ] Rivera to look out for [Spencer] next time." Spencer subsequently e-mailed LaSalvia and Stumpp regarding her conversation with Rivera. In May 2000, Spencer spoke with Rivera regarding Rivera's concern about Spencer's reaction to her previous, purportedly sexually offensive, comments. Spencer told Rivera "that she was comfortable that the issues regarding [ ] Rivera's previous comments were resolved when [she] spoke to [ ] Rivera on February 7, 2000, and [she] had moved on."

In early February 2000, Spencer was working as Lead Worker II for Claims Analysts. On February 2, 2000, Rivera sent a letter to all Lead Workers in which she reminded them of the requirement that each Lead Worker close at least ten cases per month. Rivera attached a document that listed the number of cases each Lead Worker closed in January. According to the document, Spencer closed only two cases, making her the least productive Lead Worker in the Bureau. From February 2000 to August 2000, Spencer closed, on average, less than four cases a month, thereby retaining her status as the least productive Lead Worker in the Bureau. From May 2000 until November 2000, Spencer

claims that Rivera singled her out, scrutinized her work, closely monitored her, and provided her with conflicting information regarding her job duties.

In September and October of 2000, the OAG Lead Worker Committee ("Committee") in Chicago undertook the task of recommending employees to Lead Worker II for Claims Analysts positions in the Crime Victims Compensation Bureau in Chicago. The Committee consisted of the following individuals: Director Rivera, Coordinator Hayes-Lopez, Director Stumpp, Director LaSalvia, Director of the Budget/Fiscal Bureau, Dianne R. McFarland, and Staff Assistant for the Human Resources Bureau, Joseph Zecchin. The employees recommended by the Committee in September 2000 were to be temporarily appointed for an eighteen-month period to Lead Worker II, commencing on October 1, 2000, and continuing until March 31, 2002. On or around September 15, 2000, the Committee interviewed the following individuals for the position of Lead Worker II for Claims Analysts: Lorothea Spencer, Veronica Aguirre, Gary Arkiss, Chris Athanasoulis, Roxanne Behnke, Cathy Crayton-Gray, Al Flores, Audrey Gayle, Denise Jones, Sharon Murtaugh-Hosty, Wesley Nagell, Martha Perales, and Debbie Sladek.

The Committee interviewed each applicant for approximately twenty minutes, during which time it asked each applicant the same interview questions. The Committee considered the following factors when evaluating each applicant: (1) the applicant's job performance in their current position with the OAG; (2) the applicant's performance during the interview; (3) the applicant's initiative regarding continuing education and training; (4) the applicant's history of prior discipline; and (5) the applicant's working relationships with OAG employees in general. After the Committee interviewed the applicants, it met to discuss each applicant and to recommend which applicants should be temporarily appointed or reappointed to the Lead Worker II position. Deputy Attorney General Bob Spence, Chief Deputy

Attorney General Carloe Doris, and Chief of Staff Richard Stock received and approved the Committee's recommendations.

In early October 2000, the Committee notified the applicants of the OAG's decision. Arkiss, Athanasoulis, Crayton-Gray, and Nagelli were reappointed the position of Lead Worker II – a position they had held from April 1, 1999 to September 30, 2000. Perales and Spencer, both of whom held the position of Lead Worker II from April 1, 1999 to September 30, 2000, were not reappointed to that position. Flores, who was a Lead Worker II from July 17, 2000 to September 2000 while Perales was on leave from the OAG, was reappointed to that position as of October 1, 2000, thereby replacing Perales. The OAG has received no complaints of discrimination or retaliation from Perales. Jones, an OAG employee since 1991, and a Claims Analyst in the Crime Victims Compensation Bureau since 1994, was appointed to replace Spencer.

During the Committee's interview of Jones, her responses to the questions asked by the Committee were well thought out and concise. Jones appeared to be very interested and enthusiastic about the possibility of being appointed as Lead Worker II. Jones demonstrated that interest and enthusiasm by asking numerous questions of the Committee members regarding the position. Each member of the Committee believed that Jones was an excellent candidate for Lead Worker II. During the Committee's interview of Spencer, members of the Committee perceived her to not be as interested or enthusiastic as Jones about the prospect of being reappointed Lead Worker II. Committee members did not believe that Spencer responded as well as Jones to the questions posed. At no time during her interview did Spencer state that Rivera or any other OAG employee had sexually harassed her.

During the Committee's deliberations, for which Spencer was not present, Stumpp informed the Committee that on several occasions in the year 2000, Spencer admitted to him that she was interested in obtaining a different position with the OAG. Stumpp also told the Committee that Spencer said that

7

she was "burned out," on the position of Lead Worker II. Spencer denies making such a statement to Stumpp. The Committee considered the annual performance evaluation of Spencer's work between June 1998 and June 1999. Spencer's overall score on the evaluation was 4.5 out of a possible 5 points.

The Committee also considered Spencer's more recent work performance. Director Rivera provided the Committee with a document detailing the number of cases each Lead Worker II closed between February 2000 and August 2000. The document revealed that Spencer closed, on average, less than four cases each month, making Spencer the least productive Lead Worker II during that time period. Director Rivera also informed the Committee that she had received complaints about Spencer that she was frequently unavailable to her team members to answer their questions and concerns regarding their cases. Similarly, she told the Committee that Spencer would leave her workstation so that she would be unavailable to claimants. Director Rivera did not tell the Committee that Spencer had complained of Rivera's purportedly sexually offensive remarks. The Committee did not discuss any complaints of sexual harassment or other discrimination made by Spencer.

In October 2000, Rivera provided written performance evaluations to all Claims Analysts under her supervision for the period from July 1999 to July 2000. Rivera provided Spencer with her annual performance evaluation on October 26, 2000. Spencer's overall score on the evaluation was 1.25 out of 3 total points. Rivera's comments on Spencer's evaluation mirrored those she made to the Committee during its deliberation process. The following morning, Rivera provided Spencer with an amended evaluation that reflected an increase in Spencer's overall score to 1.5 points. Spencer considers the evaluation to have been untimely. She also disagrees with the comments and scores Rivera provided.

In December 2000, Kimberly Pate Godden, Assistant Attorney General and Chief of the Crime Services Division, became Spencer's direct supervisor. Spencer believes that Rivera influenced Godden

to have a negative attitude toward Spencer.[4] Spencer admits that she has not "always agreed on everything" with Godden. Under Godden's supervision, Spencer has taken long breaks, long lunches, arrived late to work, and left work early. Spencer has not reapplied for the position of Lead Worker II.

Following the Committee's decision, Spencer filed three complaints against the OAG, not including the present lawsuit, pertaining to the Committee's refusal to reappoint Spencer to the position of Lead Worker II. First, on October 13, 2000, Spencer filed a grievance, which did not mention Rivera's allegedly sexually offensive remarks, with the Illinois Federation of Public Employees ("IFPE"). The grievance was denied. Second, on November 22, 2000, Spencer filed a Charge of Discrimination with the EEOC and the Illinois Department of Human Rights. Spencer received a Notice of Right to Sue on July 11, 20001. Third, on December 26, 2000, Spencer filed a Sexual Harassment Complaint Form with the OAG's Equal Employment Opportunity ("EEO") Officers Nancy Carlson and Judy McAnarney. After December 26, 2000, the Officers received no further internal complaints of discrimination or retaliation from Spencer. In February 2001, the Officers concluded their investigation in favor of the OAG. On October 10, 2001, Spencer filed the instant lawsuit against the OAG alleging hostile work environment sexual harassment and retaliation in violation of Title VII.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[4]On May 6, 2002, Godden relocated Spencer's office materials approximately ten feet to a workstation similar in size to that assigned to all other Claims Analysts in order to accommodate two staff members moving to the work area without incurring additional cost to the OAG. Spencer filed a grievance with the IFPE protesting the relocation of her workspace.

9

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citations omitted). Once the moving party has met this burden of production, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

### B. Hostile Work Environment

In order to maintain an actionable claim for sexual harassment under Title VII, a plaintiff must demonstrate that her co-worker or supervisor harassed her because of her sex. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). The harassment must be "so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (citation omitted). The Supreme Court has characterized a hostile work environment as one that is "both objectively and subjectively offensive, one that a reasonable person would find hostile and abusive, and one that the victim in fact did perceive to be so." *Faragher*, 524 U.S. at 787. As the Seventh Circuit has noted, "Title VII does not prohibit all verbal or physical harassment in the workplace." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002). Consequently, "isolated and minor incidents of questionable conduct generally will not warrant a conclusion of sexual harassment." *Id.*

Spencer alleges that Rivera made sexually offensive comments to her on three occasions. First, in March or April 1999, prior to Spencer's interview for Support Staff Coordinator, Rivera recommended that Spencer wear a tight red dress with a high split to the interview to make Support Services Director

10

Thomas Stumpp blush. Second, on April 9, 1999, prior to Spencer's interview for a Lead Worker position, Rivera told Spencer that she informed Support Staff Coordinator Hayes-Lopez that Spencer was wearing a tight red suit to the interview. Rivera also informed Spencer that Hayes-Lopez admired Spencer's body. Third, on or around January 31, 2000, Rivera told Spencer that when Stumpp told Rivera that there were no job openings, Rivera replied that "if you go see [Spencer] you will have something available." Spencer describes a myriad of additional, purportedly harassing, conduct that she asserts created a hostile work environment.[5] We cannot, however, consider the additional conduct Spencer describes in our evaluation of Spencer's hostile work environment claim because the conduct was neither sexual in nature nor based on Spencer's sex. *See Oncale*, 522 U.S. at 81.

The OAG argues that Title VII's 300-day limitations period bars Rivera's first two allegations of sexual harassment. We disagree. Title VII requires a plaintiff to file a charge of discrimination with the EEOC or appropriate state agency – here the Illinois Department of Human Rights ("IDHR") – no later than 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. §2000e-5(e)(1); *see also EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 970 (7th Cir. 1996) ("Illinois is a 'deferral state,' and so the limitation period runs for 300 days from the date of the alleged discrimination."). In bringing a charge of a hostile work environment, however, the plaintiff "need only file a charge within . . . 300 days of *any act* that is part of the hostile work environment." *Nat'l R.R.*

---

[5] Spencer claims that Rivera harassed her from May to November 2000 by singling her out, scrutinizing her work, closely monitoring her, and providing her with conflicting information regarding her job duties. Spencer also claims that EEO Officers Nancy Carlson and Judy McAnarney harassed her by failing to conduct their investigation of her internal Sexual Harassment Complaint in a fair and thorough manner. Spencer finally claims that her current supervisor, Kimberly Pate Godden, harassed her on May 6, 2002 by relocating her office materials approximately ten feet to a workstation similar in size to that assigned to all other Claims Analysts in order to accommodate two staff members moving to the work area without incurring additional cost to the OAG.

*Passenger Corp. v. Morgan*, 122 S.Ct. 2061, 2075 (2002). Indeed, so long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *See id.* at 2074. Spencer filed a Charge of Discrimination with the IDHR and the EEOC on November 22, 2000, within 300 days of Rivera's purported January 31, 2000 comments to Spencer. Thus, this Court can consider the comments Rivera allegedly made to Spencer in 1999.

It is clear from Spencer's complaint that she considered Spencer's comments to her to be so severe and pervasive as to make her work environment hostile. In determining whether Spencer's conduct created an objectively hostile work environment, we examine the frequency and severity of the conduct as well as whether it unreasonably interfered with Spencer's work performance. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (setting forth the factors a district court may consider when evaluating whether the conduct at issue was objectively offensive). Despite Simon's subjective perceptions, we find that an objective person would not view her work environment as hostile.

Although Rivera's conduct was questionable, it was neither frequent nor severe. She merely made brief comments to Spencer about her body and attire on just three occasions over a period of thirteen months. *See Koelsch v. Beltone Elecs. Corp.*, 46 F.3d 705, 708 (7th Cir. 1995) (holding that work environment was insufficiently severe and pervasive where company president stroked employee's leg with his foot, grabbed her buttocks, and made other unwanted sexual advances). Furthermore, even Spencer does not allege that Rivera's comments unreasonably interfered with her work performance. To the contrary, as Spencer's retaliatory action claim reveals, Spencer believes that she successfully performed her duties as Lead Worker and Claims Analyst. In light of the foregoing reasons, we grant the OAG's motion for summary judgment on Spencer's hostile work environment claim.

C.  **Retaliatory Action**

There are two ways for a plaintiff to establish a Title VII claim of retaliation: (1) by presenting direct evidence; or (2) by utilizing the indirect approach under the *McDonnell Douglas* burden-shifting analysis *See Stone v. City of Indianapolis Public Utils Div.*, 281 F.3d 640, 643-44 (7th Cir. 2002). Under the direct evidence approach, a plaintiff must present "evidence that establishes without resort to inferences from circumstantial evidence . . . that he engaged in protected activity (filing a charge of discrimination) and as a result suffered the adverse employment action of which he complains." *Id.* Spencer, despite her insistence otherwise, does not present this Court with any direct evidence that establishes that the OAG failed to reappoint her to the position of Lead Worker II in October 2000 as a result of her February 2000 informal complaint regarding Rivera's comments. Consequently, Spencer must establish her claim of retaliation under the *McDonnell Douglas* burden-shifting analysis.

The *McDonnell Douglas* analysis involves three steps. First, the plaintiff must establish a prima facie case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff succeeds in doing so, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its action. *See id.* Finally, if the defendant meets this requirement, the burden shifts back to the plaintiff to present evidence that the reason provided by the defendant is pretextual. *See id.* at 804. If the plaintiff does not satisfy her initial burden of establishing a prima facie case, the defendant is entitled to summary judgment, and the court need not proceed to evaluate the second and third steps in the process. *See Oest v. Illinois Dep't of Corrections*, 240 F.3d 605, 610 (7th Cir. 2001).

To establish a prima facie case of discrimination, Spencer must show that: (1) she engaged in a statutorily protected activity; (2) she was performing her job satisfactorily at the time of the adverse employment action; (3) she suffered an adverse employment action; and (4) similarly situated employees who did not engage in statutorily protected activity were treated more favorably than Spencer. *See Stone*, 281 F.3d at 644. The OAG does not dispute that Spencer satisfies the first and third elements of

her prima facie case: that Spencer complained about Rivera's comments to Rivera and other OAG staff members; and that the OAG declined to reappoint Spencer to the position of Lead Worker II.[6] Where Spencer fails, the OAG argues, is in establishing the second and fourth elements of her case. We agree.

Spencer does not provide this Court with evidence that she was satisfactorily performing her job duties as Lead Worker II at the time of the OAG's decision not to reappoint Spencer to that position. We are unpersuaded by Spencer's submission of previous favorable employment reviews, certificates of completion, and letters of commendation she received since becoming a member of the OAG staff in 1991. In evaluating "the question of whether an employee was meeting an employer's legitimate employment expectations, the issue is not the employee's past performance but whether the employee was performing well at the time of" the adverse employment action. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002).[7] "If a plaintiff fails to demonstrate that she was meeting her employer's

---

[6]Spencer urges this Court, in its discussion of its hostile work environment claim, to adopt a much broader view of what constitutes an adverse employment action in this case. We decline to do so. As the Seventh Circuit noted, "not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) (citation omitted). Indeed "adverse actions must be materially adverse to be actionable, meaning more than a mere inconvenience." *Oest*, 240 F.3d at 612 (citation omitted). Thus, we reject Spencer's claim that Kimberly Pate Godden's relocation of her office materials approximately ten feet to a workstation similar in size to that assigned to all other Claims Analysts constitutes an adverse employment action.

We similarly reject Spencer's contention that Rivera's issuance of her annual performance evaluation for the period of July 1999 to July 2000 constitutes an adverse employment action because it was issued late and was unjustifiably negative. With regard to the timing of the evaluation, Spencer concedes that Rivera did not provide written performance evaluations to any of the Claims Analysts under her supervision for the period from July 1999 to July 2000 until October 2000. Furthermore, it is difficult to conclude that Spencer's chances for reappointment were diminished by not having a poor evaluation on file in September 2000. With regard to the content of the evaluation, Spencer offers no evidence demonstrating that Rivera was unjustified in providing her with a negative evaluation. Even if Spencer was able to produce such evidence, however, "negative performance evaluations alone" do not "constitute an adverse employment action." *Smart*, 89 F.3d at 442.

[7]We also disregard the statements of Spencer's co-workers indicating that she performed her job satisfactorily. As we noted in our discussion of the OAG's motion to strike, these statements,

legitimate employment expectations at the time of [the adverse employment action], the employer may not be put to the burden of stating the reasons for [that action]." *Id.* at 328 (citing *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir. 1997)).

In reviewing the record, we agree with the OAG that Spencer was not performing her job satisfactorily. The Crime Victims Compensation Bureau processes and investigates more than 6,000 claims annually. As Lead Worker II, Spencer was required to close ten cases each month. On February 2, 2000, Marilyn Rivera, Spencer's direct supervisor at the time, sent a letter to all Lead Workers in which she reminded them of the mandatory minimum case closure requirement. Rivera attached a document that listed the number of cases each Lead Worker closed in January. According to the document, Spencer closed only two cases, making her the least productive Lead Worker in the Bureau. From February to August 2000, Spencer closed, on average, less than four cases a month, thereby retaining her status as the least productive Lead Worker in the Bureau.[8] As of early September 2000, when Spencer submitted her application to the Committee to be reappointed to Lead Worker II, her work performance did not show signs of improvement. On these facts, we hold that Spencer failed to meet her burden of establishing that she was performing her job satisfactorily at the time the Committee did

---

submitted to the Court as Plaintiff's Exhibit I, are not properly authenticated as required by the Federal Rules of Evidence. *See* FRE 901-902. Even if the statements were admissible, Seventh Circuit has held "that the general statements of co-workers, indicating that a plaintiff's job performance was satisfactory, are insufficient to create a material issue of fact as to whether a plaintiff was meeting her employer's legitimate employment expectations at the time" of the adverse employment action. *Peele*, 288 F.3d at 329.

[8]Spencer claims that Rivera provided her with conflicting information regarding her duty to close out cases. According to Spencer, Rivera indicated that the production quota for closing out cases would be replaced by a thirty day turn-around policy as of July 1, 2000. In September 2000, Rivera told each Lead Worker what cases she wanted closed by the end of the month. In October 2000, Rivera recirculated the memo she initially distributed in February 2000. Regardless of the policy, however, Spencer remained the least productive Lead Worker from January 2000 to August 2000.

not reappoint her to the position of Lead Worker II. Consequently, this Court may not shift the burden to the OAG to explain the reasons why she was not reappointed.

Spencer also fails to demonstrate that the OAG treated her any differently than a similarly situated employee who did not engage in a statutorily protected act. To meet her burden, Spencer "must show that there is someone who is directly comparable to her in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). Spencer points to only one individual who she believes is similarly situated to her – Denise Jones, the individual the Committee recommended to replace Spencer as Lead Worker II. Spencer does not, however, set forth how Jones is directly comparable to her in all material respects. Indeed, the record reveals that Spencer and Jones differed from one another in September 2000 with regard to their positions and responsibilities at the OAG. At that time, Spencer was serving as Lead Worker II and was seeking reappointment to that position, while Jones was serving as a Claims Analyst and was seeking a new appointment to Lead Worker II. On these facts, we cannot compare the treatment of Spencer and Jones, and we hold that Spencer failed to meet her burden of establishing that Jones is a similarly situated employee. *See Patterson*, 281 F.3d at 680 (finding that employees with different supervisors, different levels of experience, and different job responsibilities were not similarly situated).[9] In light of Spencer's failure to establish her prima facie case, we grant the OAG's motion for summary judgment on Spencer's retaliation claim.

---

[9]By contrast, the OAG identifies an employee, Martha Perales, who is similarly situated to Spencer that did not engage in a statutorily protected act who is treated no differently than Spencer. The OAG appointed both Spencer and Perales to the position of Lead Worker II for the period from April 1, 1999 to September 30, 2000. The OAG took issue with the job performance of Spencer and Perales. Unlike Spencer, Perales did not informally or formally complain of discrimination or retaliation. However, the OAG did not reappoint Spencer or Perales to the position of Lead Worker II for the eighteen month term beginning October 1, 2000.

16

## III. CONCLUSION

For the foregoing reasons, this Court grants the OAG's motion to strike as well as its motion for summary judgment. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated 12/30/02